**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CARCHARADON, LLC,** an Illinois | ) | |
| limited liability company, and | ) | |
| **DAVID SWEIG**, an individual, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. No. 21-cv-2890 |
| | ) | |
| v. | ) | Hon. _____ |
| | ) | |
| **ASCEND ROBOTICS, LLC**, | ) | Hon. Magistrate Judge _____ |
| a Delaware limited liability company, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT AND JURY DEMAND

Plaintiffs, Carcharadon, LLC and David Sweig ("Sweig"), by and through their attorneys,

for their Complaint against Defendant, Ascend Robotics, LLC, allege as follows:

## INTRODUCTION

1. In reliance on false representations and bad faith promises that Ascend Robotics

LLC ("Ascend Robotics"), through its controlling member, David Askey ("Askey"), made to him,

Sweig devoted nearly two years of his life – using his considerable business and financial expertise,

and his network of stellar business and professional relationships – to build a major new business,

an entity formed by Askey, Aryze, LLC ("Aryze"). Sweig did so after having been sought out and

solicited by Askey and by Ascend Robotics

2. After Sweig's efforts - through his solely owned company, Carcharadon, LLC

("Carcharadon" and, together with Sweig, "Plaintiffs") - had positioned the new business for great

success, Ascend Robotics revealed its participation in an unlawful scheme with Askey, its

controlling member, to seize the immense business opportunity for itself, Askey and that of Ascend

Build LLC ("Ascend Build"). On information and belief, Askey formed Ascend Build to capitalize on the fruits of Carcharadon's efforts through Sweig.

3.      Ascend Robotics unlawfully deprived Sweig and Carcharadon of the benefits of the new business they had brought to the cusp of success. Ascend Robotics has inflicted damages on Sweig and Carcharadon in excess of $40 million.

## THE PARTIES, JURISDICTION AND VENUE

4.      Sweig is a resident of Deerfield, Illinois. He has had a successful career spanning nearly 30 years as a management consultant, investment banker, and entrepreneur.  He has worked for, and been a partner in, prestigious firms, including Bain & Company where he co-led a practice area providing management consulting services to companies facing transformational change, Piper Jaffray providing investment banking services, and Ernst & Young in a corporate finance advisory and strategy unit. Sweig's core competencies include advising businesses to improve their operations, to reduce costs, to increase revenue and to increase profitability. He also has advised companies concerning mergers and acquisitions, financial restructurings and capital management strategies. He has worked with companies across the globe and at every stage of business life-cycles from start-ups to companies with in excess of $75 billion in annual revenue.

5.      Sweig has also been involved in leading, structuring and providing other valuable assistance to several start-up ventures where he served as CEO and COO.

6.      Carcharadon is an Illinois limited liability company with its principal place of business in Deerfield, Illinois. Sweig formed Carcharadon in 2013 and is its sole member. Sweig typically works through Carcharadon to provide a broad range of services to assist businesses and investors, as he did in the matters discussed in this Complaint.

2

7.      Ascend Robotics is a Delaware limited liability company with its principal place of business in Cambridge, Massachusetts. According to its corporate filings with the State of Delaware, Askey formed Ascend Robotics in 2017. On information and belief, at all relevant times Ascend Robotics has been substantially or wholly owned by Askey and has been and remains controlled by him. Askey is a resident of Massachusetts. On information and belief, any and all other members of Ascend Robotics are residents of Massachusetts; none of them is a resident of Illinois.

8.      Ascend Robotics is a robotics business that provides services and products to various industries based primarily on technology that it develops. Ascend Robotics owns the rights to and has developed intellectual property that is the foundation of the various businesses it owns. Ascend Robotics claims it has successfully used a model in which it owns and develops technologies and then licenses them to affiliated service companies to execute commercially in particular industries.

9.      Ascend Robotics conducts business within this District and is subject to the jurisdiction of this Court.

10.     Venue is proper in this Court because, among other reasons, a substantial part of the events and misconduct giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS

### Ascend Robotics' Representations that Induced Sweig to Join the Venture

11.     Sweig was introduced to Askey and Ascend Robotics in 2017. At the same time, Sweig was introduced to Robert Cohanim ("Cohanim"), an Illinois resident who operates a business here and was one of Aryze's owners. Through Askey, Ascend Robotics and Cohanim represented to Sweig that Ascend Robotics had been developing a robotics technology capable of disrupting the global commercial construction trades, focused initially on the commercial painting

industry. The robotics technology would dramatically slash labor costs by substituting highly efficient robots for human labor.

12.     According to Askey, individually and on Ascend Robotics' behalf, while Ascend Robotics was able to complete the robotics development, it needed Sweig's business, finance, and management expertise to build a new successful business based on the technology.

13.     This transformative new business with vast potential would work in "partnership" with Ascend Robotics, a company that Askey represented he had formed within the past several years. This "partnership" was essential to the successful development of the new business because Ascend Robotics' technology was to become the basis of the new business's capabilities.

14.     Askey, on Ascend Robotics' behalf, represented that Ascend Robotics was a recognized leader in robotics development.

15.     Askey, on Ascend Robotics' behalf, assured Sweig that Ascend Robotics was well capitalized, well-known and respected in the early-stage venture capital financing community and had access to capital sponsors to fund the commercial development.

16.     Askey, on Ascend Robotics' behalf, represented that Ascend Robotics would contribute its technology, and the future technology that Ascend Robotics would develop, to the new entity, which became Aryze, for exclusive "field of use" purposes in the commercial construction marketplaces.

17.     Sweig and Askey repeatedly discussed Askey's desire to attract investors into an entity outside of Ascend Robotics. Given that fact, Sweig informed Askey that Ascend Robotics' intellectual property and technology would need to be freely available to the new entity in an arms-length, perpetual royalty-free license agreement to attract investors to invest in the new entity. *See infra at ¶¶ 30-31*. Askey, on Ascend Robotics' behalf, agreed to provide this form of license

4

agreement to Aryze as a pivotal element in inducing Sweig and Carcharadon to build the new business.

18.     Cohanim, Askey and Ascend Robotics – through Askey – invited Sweig, through Carcharadon, to join them in the development of the new business as a consultant pursuant to a written agreement to be created.

19.     Ascend Robotics – through Askey – knew that Sweig's business and financial experience was essential to create and develop the new business. Neither Cohanim, Askey nor Ascend Robotics possessed Sweig's experience, relationships or skill set.

20.     Askey, individually and on Ascend Robotics' behalf, informed Sweig that the new venture's robot prototype would be ready for testing by August of 2018.

21.     Askey, individually and on Ascend Robotics' behalf, and Cohanim represented to Sweig that they would devote reasonable time to the new entity's development.

22.     Askey, individually and on Ascend Robotics' behalf, and Cohanim told Sweig that they wanted and needed Sweig to be a significant part of the new venture – which Askey formed shortly thereafter as Aryze.

23.     Initially, Askey, Ascend Robotics – through Askey – and Cohanim anticipated that Sweig, through Carcharadon, would provide assistance in developing a business plan by analyzing business and financial issues and preparing the business and financial plans for the company, bringing investment into the company, and helping to attract a strong executive team.

24.     Sweig's responsibilities, through Carcharadon, expanded substantially as his involvement in the new venture developed.

**Sweig Enters into the Agreements in Reliance on Ascend Robotics' Representations**

25.     In reliance on the representations described in paragraphs 11 through 24 above, Sweig, on Carcharadon' behalf, executed two written agreements with Aryze, Cohanim and

Askey, one in December of 2017 ("the December 2017 Agreement") and another in June of 2018 ("the June 2018 Agreement"), pursuant to which Carcharadon provided a broad range of services with the goal of commercializing Ascend Robotics' technology (collectively, "the Agreements"). *Exhibit 1: December 2017 Agreement; Exhibit 2: June 2018 Agreement*. The signatory parties to the December 2017 Agreement were Carcharadon, Askey, Cohanim and Phoenix Construction, LLC ("Phoenix") – Aryze's predecessor-in-interest which was never formed. Shortly after the execution of the December 2017 Agreement, Aryze assumed all of Phoenix's obligations and rights under that Agreement.

26.     While Ascend Robotics was not formally a party to either of the Agreements, the purpose of the Agreements was to commercialize "various robotics applications" that Ascend Robotics owned.

27.     Based on Askey's representations, individually and on Ascend Robotics' behalf, that the technology would be operational by August of 2018, Sweig knew that timing was critical to Aryze's development. Accordingly, Sweig proceeded to discharge his responsibilities immediately after executing the December 2017 Agreement.

28.     Sweig worked diligently on Aryze's behalf for nearly two years until his wrongful termination, discussed *infra*, in September of 2019 when his efforts had all but assured Aryze's success.

29.     As partial consideration for the wide range of services they provided under the Agreements, Carcharadon or Sweig received a significant minority equity interest in Aryze along with voting rights. Ascend Robotics, as consideration for granting the exclusive, perpetual royalty-free IP license agreement discussed *infra*, also became an equity voting member of Aryze.

Collectively, through their ownership interests, Askey and Ascend Robotics – through Askey – had voting control of Aryze.

## The IP License Agreement

30.     In early 2018, Aryze and Ascend Robotics agreed that the best way to develop Aryze's business was to structure the relationship between Ascend Robotics and Aryze concerning Ascend Robotics' applicable intellectual property/technology through what they referred to as a "spin out" from Ascend Robotics.  By "spin out," the parties meant that Ascend Robotics' existing intellectual property and technology, and that which would be developed, including applicable trademarks ("the Ascend IP"), would be "spun out" into Aryze to be utilized freely by Aryze. Aryze, in turn, would be a separate, independent entity from Ascend Robotics. The parties understood and agreed that the IP License Agreement needed to be commercially reasonable and arms-length and therefore provide Aryze with unfettered access to the Ascend IP. The IP License Agreement was crucial for Aryze to attract potential investors.

31.     To that end, in early 2018 Ascend Robotics agreed that it would provide Aryze with an exclusive, perpetual, royalty-free IP license enabling Aryze to use all current and future Ascend IP in the field of use and related fields of use, *i.e.*, the commercial painting industry and related markets ("the IP License Agreement").

32.     From early 2018 until late August of 2019, Ascend Robotics – through Askey – repeatedly confirmed the terms of the IP License Agreement to Sweig and Carcharadon. Askey, on Ascend Robotics' behalf, represented and promised that Ascend Robotics would execute a formal IP License Agreement containing the same material terms described above.

33.     For example, in July of 2018, Askey and Ascend Robotics – through Askey – presented Sweig, through Carcharadon, with a draft IP License Agreement dated July 6, 2018, prepared by Ascend Robotics' attorneys. The draft provided that "[l]icensor [Ascend Robotics]

hereby grants to Licensee [Aryze] a sole and exclusive perpetual, irrevocable, fully paid-up, royalty free license…" *Exhibit 3: July 2018 Draft License Agreement, p. 2*.

34.  Subsequent drafts that Askey and Ascend Robotics – through Askey – presented to Sweig, through Carcharadon, mirrored prior drafts of the IP License Agreement. *See, e.g., Exhibit 4: June 20, 2019 Draft IP License Agreement, at § 2.1* ("[Ascend Robotics] hereby grants to [Aryze] a sole and exclusive, perpetual, irrevocable, fully paid-up, royalty-free license, with the right to sublicense in multiple tiers, to make, have made, distribute, use, offer to sell, and import Licensed Products and to practice the Licensed Patents set forth below, solely and exclusively in the Aryze Businesses, throughout the world."). Ascend Robotics' attorneys also prepared those drafts.

35.  Ascend Robotics – through Askey – also enthusiastically approved numerous confidential investor memoranda ("CIMs") and other written materials that Carcharadon, through Sweig, prepared for potential Aryze investors, often with Askey's input. Those CIMs, other investor and commercially oriented materials touted the IP License Agreement.

36.  For example, by August of 2018, Carcharadon, through Sweig, on Aryze's behalf, had completed a 74-page CIM for "Fall 2018."  *Exhibit 5: Fall 2018 CIM* (*relevant excerpts*).

37.  The Fall 2018 CIM was consistent with material representations and promises that Ascend Robotics – through Askey – had made to Carcharadon through Sweig concerning the IP License Agreement, especially concerning the independence of Aryze vis-à-vis Ascend Robotics.

38.  For example, the Fall 2018 CIM provided that "[r]esearch, Development and IP protection will be done by our partner Ascend [Robotics] in order to reduce complexity and avoid duplication of effort. Aryze **has negotiated** an exclusive, perpetual and royalty free agreement for the use of the technology in both core and adjacent markets." *Id. at p. 33* (*emphasis added*).

8

39.     Askey, individually and on Aryze and Ascend Robotics' behalf, told Sweig that the "CIM looks great." *Exhibit 6: August 3, 2018 Email from Askey to Sweig*.

40.     In addition, by August of 2018, Carcharadon through Sweig, with Ascend Robotics' input and approval through Askey, had prepared an 18 page "Aryze Management Presentation." *Exhibit 7: Aryze Management Presentation*. The Aryze Management Presentation again confirmed that "Aryze has an exclusive, perpetual and royalty free agreement to utilize the portfolio of Ascend's technologies in connection with all Aryze solutions." *Id*.

41.     By May of 2019, Carcharadon, through Sweig, with Ascend Robotics' input and approval through Askey, prepared an updated CIM for "Summer 2019." *Exhibit 8: Excerpts from Summer 2019 CIM*.

42.     The Summer 2019 CIM repeated that Aryze has a "[p]erpetual, royalty-free license and exclusive rights to technologies in construction and adjacent markets that 'follow' the Company." *Id. at p. 11*.

43.      The Summer 2019 CIM also repeated that "Aryze **has** negotiated an exclusive, perpetual and royalty free agreement for the use of the technology in both core and adjacent markets." *Id. at p. 33* (*emphasis added*).

44.     Potential investors and commercial partners commented enthusiastically about the CIMs and other Aryze investor materials and expressed interest in investing in Aryze.

45.     Sweig had every reason to believe Aryze would be a success, and that Askey and Ascend Robotics would satisfy their agreed obligations, promises and representations concerning the IP License Agreement.

46.     In reliance on, among other things, the representations that Ascend Robotics made to him, including its representations concerning the IP License Agreement, in May of 2018 Sweig

terminated two lucrative Carcharadon consulting agreements, one with Lego Systems and another with Alcentra Capital Corporation.

47.    In total, these two consulting agreements paid Carcharadon between $65,000 and $75,000 monthly. Sweig terminated these Carcharadon consulting agreements because doing so was necessary to enable him to meet his increasing responsibilities to Aryze.

48.    Ascend Robotics – through Askey – knew that Sweig terminated these valuable consulting agreements in reliance on, among other things, the representations made by Ascend Robotics, including its representations concerning the IP License Agreement. Sweig also stopped soliciting new assignments on Carcharadon's behalf because Askey, individually and on Ascend Robotics' behalf, indicated that Sweig was going to have a senior leadership position at Aryze in addition to his seat on Aryze's Board of Directors.

49.    Between October 2018 and February 2019, for the same reasons, Sweig decided not to pursue two partnership opportunities presented to him by acclaimed global consulting firms, A.T. Kearney and Alvarez & Marsal; the partners at each of those firms earn at least approximately $1 million – $2.5 million annually.

**Sweig's Great Efforts Put Aryze on the Cusp of Great Success**

50.    Through his extensive relationships network, Sweig worked tirelessly on Aryze's behalf to create concrete interest from potential investors and customers.

51.    These potential investors and customers included prominent venture capital companies and construction companies, as well as individuals. Among them were highly recognized builders such as Gilbane, Hines, ClayCo Construction and Sterling Bay, owners/operators such as Blackstone, Brookfield, Waterton, Le Frak, CBRE, JLL, BH Management, and other construction industry participants such as Ozinga Concrete, United Rentals and Stanley/Black & Decker.

52.     In April of 2019, based solely on his efforts, Sweig initiated serious discussions with Saint-Gobain about investing in Aryze.

53.     Saint-Gobain is a world renowned, global building products and materials company and one of the world's leading firms in the construction and related industries, with more than $40 billion in annual revenues. Sweig understood that Saint-Gobain would be an ideal strategic investor for Aryze.

54.     Sweig and Askey met with high-level executives from Saint-Gobain on April 25, 2019. The meeting went very well. During that meeting, Askey unequivocally represented the material terms of the IP License Agreement to Saint-Gobain executives – they were entirely consistent with the representations and promises that Askey, on Ascend Robotics' behalf, had made to Sweig and Carcharadon since early 2018.

55.     During that same period, solely due to his networking efforts, Sweig, on Aryze's behalf, began to develop important relationships with representatives of WeWork Companies, Inc. ("WeWork"). The IP License Agreement was crucial to WeWork's interest in developing a strategic relationship with Aryze.

56.     WeWork was one of the largest landlords in the world with control of over one billion square feet of office space. WeWork was the largest landlord in the New York area, where it controlled in excess of five million square feet of commercial property. Thus, WeWork had the potential to become a substantial initial Aryze customer.

57.     In late April 2019, Sweig reported to WeWork the outcome of the first preliminary field trial for the Aryze robot – nine months behind schedule due to Ascend Robotics' delays. Those preliminary field tests for Aryze's robots – using Ascend Robotics' technology – delivered successful results.

58.     Through Sweig's efforts, through Carcharadon, on Aryze's behalf, WeWork quickly became interested in forming a collaboration with Aryze that would have established a valuable commercial relationship and substantial revenue for Aryze based on WeWork's commercial projects in the New York area.

59.     At Askey's request, Sweig performed work outside the scope of the Agreements for Ascend Robotics' benefit. Sweig utilized his professional network and relationships to assist Ascend Robotics in its efforts to develop applications for other of its products, including cold storage/material handling, as well as leveraging Ascend Robotics' artificial intelligence engine in other platforms. Sweig was never compensated for this additional work that he performed solely for Ascend Robotics' benefit at Askey's request.

60.     By early May of 2019, Sweig's on-going efforts with Saint-Gobain had reached the point where Saint-Gobain was very interested in making an investment. *See Exhibit 9: May 9, 2019 Email from Saint-Gobain to Sweig* (noting that "[w]e had a great meeting this week in Malvern with the executive board members and they are interested in moving forward.")

61.     Saint-Gobain intended to be the lead, strategic investor in Aryze. As a lead, strategic investor, Saint-Gobain's involvement in Aryze would send a powerful message to other potential investors because of, among other things, Saint-Gobain's: (a) extensive knowledge of the industry; (b) deep relationships with customers; and (c) ability to collaborate through its expansive research and development team, which was based less than thirty miles from Ascend Robotics and Aryze's offices in Cambridge, Massachusetts and Salem, Massachusetts, respectively. Furthermore, because Saint-Gobain was in a related business, it could help produce other customers for Aryze through its vast network of global relationships.

62.     Saint-Gobain was not the only strategic investor that Sweig was pursuing through Carcharadon. Other large, well-known companies, such as ClayCo Construction (design and build firm with a venture capital division and technology focus), Sterling Bay (a large innovative builder), Hines Interests, and Navitas Capital (a prominent venture capital firm) also expressed serious interest in investing in Aryze based on CIMs and other information that Sweig provided to them – which included the agreed and approved representations and promises concerning the IP License Agreement.

63.     In reliance on Askey's numerous, consistent representations and promises on Ascend Robotics' behalf, beginning in early 2018, Sweig reiterated to Saint-Gobain representatives that the "IP" was "all Ascend [Robotic's] and would be subject to the perpetual license agreement." *Exhibit 10: May 21, 2019 Email*.

64.     By late August of 2019, Saint-Gobain had agreed on the provisions of a written term sheet with Sweig on Aryze's behalf. Saint-Gobain was eagerly awaiting the fully executed IP License Agreement, so that it could sign the term sheet, and move towards a closing date for its investment. Saint-Gobain's agreement to the term sheet was another significant milestone in Aryze's path to success that Sweig led. Saint-Gobain's agreement to the term sheet further confirmed Saint-Gobain's intention to make a substantial investment in Aryze.

65.     At that same point, Aryze had successfully completed the first of a two-phase pilot and WeWork was seriously considering creating a binding, strategic relationship as an Aryze customer.

### Based on Ascend Robotics' Projections, the Value of Sweig/Carcharadon's Equity in Aryze Would Have Exceeded $100 Million

66.     At around that same time, Askey expressly "confirmed" in writing that Sweig/Carcharadon had a 17.5% equity interest in Aryze. *Exhibit 11*.

13

67. In that same communication, Askey, on Ascend Robotics' behalf, also noted that "Aryze will have an exclusive license to the IP in the field of use." *Id*. Askey also indicated that Ascend Robotics had a 21.2% equity interest in Aryze. *Id*. Askey further indicated that he, individually, owned a 22.8% equity interest in Aryze. *Id*.

68. Askey, Ascend Robotics and Sweig/Carcharadon were Aryze's only voting members.

69. Thirty percent of Aryze's total membership units were unissued units that were reserved for a future employee pool.

70. Collectively, Askey and Ascend Robotics owned well in excess of 50% of Aryze's voting interests.

71. Thus, Askey and Ascend Robotics – which Askey controlled – controlled Aryze. Sweig/Carcharadon was the only other voting member.

72. In that same communication, Askey, on Ascend Robotics' behalf, stated that "Ascend [Robotics'] goal is to support the growth of Aryze such that Ascend [Robotic's] investment return, via [a] liquidity event for Ascend, is at least $120 million." *Id*.

73. Sweig, or Carcharadon's, equity interest of 17.5% is 85% of Ascend Robotic's equity interest of 21.2%. The December 2017 Agreement was amended in December of 2018 to provide unambiguously that Carcharadon's ownership interest, or that of Sweig, in Aryze had "been fully earned and under no circumstances will be subject to any vesting or claw-back provisions" and that "[n]othing contained herein" precludes Carcharadon, or Sweig, from "earning or being granted, any additional Ownership Interests." *Exhibit 12*. The June 2018 Agreement was amended twice: first in December of 2018 to extend the term of that Agreement due to delays

14

caused by Ascend Robotics and a second time in March of 2019 to provide for specific cash payments to Carcharadon that were unpaid and past due. *Exhibit 13*.

74.     Using Ascend Robotics' projections, expressed through Askey, concerning the value of the Aryze opportunity and Ascend Robotics' "goals," the equity investment of Sweig, or Carcharadon, would have been worth $102 million had Ascend Robotics provided the support as it represented in late August 2019, that it had previously agreed and promised to deliver through the IP License Agreement.

### Ascend Robotics Reveals its Deception, Sabotages the Aryze Opportunity for Carcharadon/Sweig and Seizes the Opportunity for its Own Benefit and that of Ascend Build

75.     Ascend Robotics' deception was first revealed in late August of 2019 when Askey sent Sweig a further draft of an IP License Agreement dated August 27, 2019, which was again prepared by Ascend Robotics' attorneys. *Exhibit 14*. Earlier in August of 2019, Sweig was actively soliciting law firms to represent Aryze – one of which was the same law firm that represented Ascend Robotics. Ascend Robotics' law firm provided information to Sweig which suggested that it had made revisions to the IP License Agreement. Alarmed by this distressing development, Sweig immediately contacted Askey and expressed his concern. Askey reassured Sweig that Ascend Robotics' law firm was working only on Ascend Robotics "housekeeping" matters. Sweig accepted Askey's reassurances.

76.     However, the August 27, 2019 draft was far from a "housekeeping" matter. It was completely inconsistent with all prior drafts of the IP License Agreement. Unlike the prior drafts, it did not provide that Aryze had a perpetual, irrevocable, royalty-free IP license from Ascend Robotics for all current and future IP in the field of use. *Id*. It also otherwise drastically changed the prior drafts by disregarding the parties' longstanding agreements concerning Aryze's right to use Ascend Robotics' trademarks. *Id*.

77. Over the next three weeks, Sweig learned that Ascend Robotics did not intend to modify its new approach of making Aryze dependent on Ascend Robotics. Ascend Robotics' new position – through Askey – was a 180-degree reversal from the fundamental agreements that Ascend Robotics and Aryze had reached long before. For nearly two years, Sweig and Carcharadon relied on representations and promises that Askey, on Ascend Robotics' behalf, made concerning the terms of the IP License Agreement that it had negotiated with Aryze. Askey, on Ascend Robotics' behalf, repeatedly promised that Ascend Robotics would implement the IP License Agreement.

78. These were the agreements and promises that also became representations to investors that Askey, on Ascend Robotics' behalf, had approved enthusiastically in writing and communicated orally to Sweig, Carcharadon, St. Gobain, We Work and other key constituents.

79. Ascend Robotics – through Askey – did not disclose at any time prior to late August of 2019 that it had requested its lawyers to change the terms of the IP License Agreement. By doing so, Ascend Robotics – through Askey – reversed the fundamental "spin out" agreement between Ascend Robotics and Aryze that had been reached in early 2018.

80. In early September of 2019, Sweig told Askey that, as Aryze's CEO and as a fiduciary, he would not sign the latest IP License Agreement. Nor would he provide it to financing partners because it was neither commercially reasonable nor arms-length; instead, it was a complete reversal of the agreement concerning the IP License Agreement that was reached nearly two years earlier. Askey, on Ascend Robotics' behalf, frequently re-confirmed the material terms of the IP License Agreement without wavering in any way.

81. Sweig's deep concerns about this abrupt turnabout were reinforced strongly by Aryze's lawyers and its highly qualified advisory board. Sweig, Carcharadon, Aryze's lawyers and

16

its advisory board agreed that the latest draft IP License Agreement would likely permanently impair Aryze and render it unfinanceable.

82.     Shortly thereafter, Sweig sent an email to Ascend Robotics' attorneys, among others, repeating his deep distress because Ascend Robotics' newly proposed IP License Agreement draft "seem[s] to be incongruous if not completely inconsistent with the business plan that has been circulated to investors for well over a year … a business plan signed off on by David [Askey] and Ascend [Robotics] in the first half of 2018…" *Exhibit 15: September 10, 2019 Email*.

83.     On September 15, 2019, Askey provided Sweig and Aryze's counsel with a copy of a revised draft IP License Agreement dated September 15, 2019. Like all prior drafts, it was prepared by Ascend Robotics' attorneys. *Exhibit 16: September 15, 2019 Draft License Agreement*.

84.     That draft departed even more drastically from the understandings and agreements that the parties had reached long before and the representations and promises that Ascend Robotics – through Askey – had repeatedly made to Sweig and Carcharadon: the grant of an IP license to Aryze was **<u>not</u>** perpetual, irrevocable or even royalty-free.

85.     Contrary to the parties' prior agreements and the representations and promises that Askey made, on Ascend Robotics' behalf, the patent rights that were provided to Aryze were not even licensed unconditionally. In addition, Aryze had no right to future IP that Ascend Robotics developed.

86.     These adverse, fundamental and drastic eleventh-hour changes were adverse to Aryze and irreconcilable with the parties' longstanding agreement. They were also irreconcilable with Ascend Robotics' frequently repeated representations and promises – made by Askey – concerning the IP License Agreement on which Sweig and Carcharadon relied to their detriment.

They constituted an upheaval of Aryze's business model that had been developed for nearly two years.

87.     In a conference call on the evening of September 17, 2019 involving Askey, other Ascend Robotics representatives and Sweig, Askey falsely claimed that there was "alignment" between the September 15, 2019 IP License Agreement draft and the business plan that Sweig/Carcharadon prepared. Ascend Robotics – through Askey – had approved of Carcharadon's business plan nearly two years earlier.

88.     Askey also stated that it was Ascend Robotics' desire to leverage the Aryze operating platform to support other Ascend Robotics' businesses and spin outs, particularly with respect to the Ascend Robotics' operations center used for Ascend Robotics' technologies.

89.     Askey's statements in the conference call were completely inconsistent with his representations and promises – on Ascend Robotics' behalf – expressed orally and in writing for nearly two years, on which Sweig and Carcharadon reasonably relied to their detriment.

90.     For the first time, it was painfully clear to Sweig that Ascend Robotics intended to seize for its own benefit the immense opportunity that he and Carcharadon had worked tirelessly on Aryze's behalf for nearly two years to develop. Sweig learned later that Askey was about to form a new company, Ascend Build, to become the unlawful recipient of the Aryze opportunity.

91.     In a telephone conference on September 17, 2019, Askey terminated Sweig and Carcharadon in bad faith. Ascend Robotics – through Askey – approved Sweig's termination.

92.     During this termination telephone conference, Askey, acting individually and on Ascend Robotics' behalf, admitted for the first time that he had been giving direction for some time to Ascend Robotics' attorneys concerning the IP License Agreement and other Aryze documents.

93.     Subsequently, in an email dated September 19, 2019 from Askey to Sweig, Askey, purporting to act as Aryze's self-appointed Manager, attached a letter further confirming that he terminated "(a) the June 1, 2018 independent contractor and consulting agreement with Aryze (as amended and modified by the December 14, 2018 and March 18, 2019 addenda) and (b) the December 14, 2017 independent contractor and consulting agreement with Phoenix Construction (the predecessor to Aryze) (as amended and modified by the December 14, 2018 addendum)." *Exhibit 17: September 14, 2019 Termination Letter*.

94.     Askey, acting individually and on Ascend Robotics and Aryze's behalf, cited two fabricated reasons for the termination:

    a.  In the foregoing September 17, 2019 conference call, Sweig indicated that if Saint-Gobain asked whether he supported the 9/15 draft license agreement between Ascend [Robotics] and Aryze, Sweig would state he did not. "This reinforced to Ricky, Amy and me that your overall vision for the future of Aryze is not aligned [sic] the collective vision of the founders."

    b.  "While you have provided important services over the years as an independent contractor and consultant, in my opinion you simply have not demonstrated the temperament that I want and that I feel Aryze needs in a CEO or in an executive-level role in the Company."

*Id*.

95.     Ascend Robotics approved Askey's termination letter. The letter also rewrote history as it relates to Sweig, or Carcharadon's, equity in Aryze. Contrary to the recent written email communication from Askey, individually and on Ascend Robotics' behalf, in which Askey "confirmed" that Sweig or Carcharadon had a 17.5% equity interest in Aryze, Askey denied that Sweig and/or Carcharadon had any equity interest in Aryze. The termination letter also ignored the December 2018 Amendment to the December 2017 Agreement, which also confirmed Sweig or Carcharadon's equity interest in Aryze.

96.     Aryze ceased operations shortly after Askey terminated Sweig, despite being on the cusp of success, and despite Askey's representations, individually and on Ascend Robotics' behalf, a few months earlier that collectively the value of his interest and that of Ascend Robotics in Aryze would exceed $250 million.

97.     In October of 2019, the very next month, Askey formed Ascend Build, an affiliated entity of Ascend Robotics, to become the recipient of the benefits of the immense business opportunity that Sweig had developed through Carcharadon on Aryze's behalf.

98.     Ascend Robotics has seized control of the major business opportunities that Sweig, through Carcharadon, diligently and tirelessly developed for nearly two years for Aryze's benefit.

99.     Ascend Robotics' misconduct complained of here includes its: (a) refusal to implement the IP License Agreement through Askey, despite its longstanding representations and promises to Sweig, Carcharadon and prospective investors and commercial partners; (b) approval of the termination of Sweig/Carcharadon by Askey; and (c) gutting of Aryze and rendering it without value by seizing the opportunity for the benefit of itself, Askey and Ascend Build.

100.    Carcharadon and Sweig more than fully and properly performed all obligations owed Defendants and have satisfied all conditions precedent to commencing this lawsuit.

101.    Ascend Robotics' unlawful and appalling actions have inflicted severe damage on Sweig and Carcharadon in excess of $40 million.

102.    Sweig and Carcharadon have asserted claims against Askey, individually, and Aryze in arbitration proceedings pending through JAMS in Chicago, Illinois – in accordance with arbitration provisions in the Agreements – for breach of contract, fraud and other business torts. Many of the representations that Askey made to Sweig on behalf of Ascend Robotics he also made in his individual capacity as well as on Aryze's behalf. Ascend Robotics is not formally a party to

the Agreements and is not a party in the JAMS arbitration proceeding. Initially, Sweig and Carcharadon asserted claims against Ascend Robotics in the JAMS Arbitration on the basis that Ascend Robotics was required to arbitrate those claims despite its status as a non-signatory to the Agreement. Ascend Robotics filed a declaratory judgment action in Massachusetts state court contending that it was not obligated to arbitrate. Sweig and Carcharadon removed that action to the United States Discuss Court for the District of Massachusetts, where the matter was assigned to the Honorable Allison D. Burroughs and given case No. 20-cv-10934 ("the Massachusetts Federal Litigation"). Sweig and Carcharadon filed a Motion Compel Arbitration in the Massachusetts Federal Litigation, which that court denied in an order dated February 5, 2021. Final judgment was entered in Ascend Robotics' favor in that case solely concerning the issue of the arbitrability of Sweig and Carcharadon's claims against Ascend Robotics. This Court is the proper forum for Sweig and Carcharadon to seek redress against Ascend Robotics for the wrongdoing it perpetrated against them.

## LIABILITY

### COUNT I

### FRAUD
### (CARCHARADON AND SWEIG AGAINST ASCEND ROBOTICS)

103.    Carcharadon and Sweig reallege and incorporate by reference paragraphs 1 through 102 as though fully set forth herein.

104.    In order to induce Sweig to enter into the Agreements through Carcharadon, after those Agreements were executed, and to induce Sweig, through Carcharadon, to continue performing those Agreements, Askey, individually, on Aryze and Ascend Robotics' behalf, made, inter alia, the following representations of material fact:

21

    a.   Beginning in early 2018, Aryze was to be independent from Ascend Robotics. To achieve Aryze's independence, the Ascend IP would be "spun out" to Aryze through the IP License Agreement;

    b.   Beginning in approximately May of 2018, Ascend repeatedly confirmed in writing and orally the terms of the Robotics IP License Agreement – that Aryze had negotiated an exclusive, perpetual, and royalty free IP license from Ascend Robotics for all of the current and future Ascend IP; and

    c.   Ascend Robotics would effectively implement the IP License Agreement.

105.    The foregoing representations made by Ascend Robotics, on Askey's behalf, were false when made.

106.    At the time that Askey made those representations, individually and on Ascend Robotics' behalf, he knew they were false and/or they were made with reckless disregard for their truth.

107.    Askey, individually and on Ascend Robotics' behalf, intended that these representations would induce Sweig, through Carcharadon, to enter into the Agreements and would induce Sweig, through Carcharadon, to continue to perform, instead of terminating the Agreements and ceasing to provide services.

108.    Carcharadon and Sweig reasonably relied on the foregoing representations of material fact.

109.    Ascend Robotics' fraud is further confirmed by Askey's repeated delays in providing a finalized written IP License Agreement. These delays were designed to conceal Ascend Robotics' deception, and that of Askey individually, and to induce Sweig, through Carcharadon, to continue their development of the Aryze business opportunity, which Ascend Robotics intended to and did usurp for its own benefit, and of which it and Ascend Build seized control.

110.    The fraud that Ascend Robotics perpetrated on Carcharadon and Sweig has damaged Carcharadon and Sweig in excess of $40 million.

111.    Under Illinois law, these egregious circumstances entitle Carcharadon and Sweig to an award of punitive damages.

WHEREFORE, Plaintiffs, Carcharadon, LLC and David Sweig, respectfully request that this Honorable Court enter judgment in their favor, and against Defendant, Ascend Robotics, LLC, in an amount to be determined at trial, impose a constructive trust on Defendant, Ascend Robotics, LLC, as it concerns the Aryze opportunity, and in Sweig and Carcharadon's favor, along with other legal and equitable relief allowed under Illinois law, including punitive damages, as well as costs, interest and attorneys' fees.

## COUNT II

### PROMISSORY FRAUD
### (CARCHARADON AND SWEIG AGAINST ASCEND ROBOTICS)

112.    Carcharadon and Sweig reallege and incorporate by reference paragraphs 1 through 102 as though fully set forth herein.

113.    In order to induce Sweig, through Carcharadon, to enter into the Agreements and, after those Agreements were executed, to induce Sweig, through Carcharadon, to continue performing those Agreements instead of terminating them, Ascend Robotics, made, inter alia, the following representations of material fact and promises:

      a.   Beginning in early 2018, Aryze was to be independent from Ascend Robotics. To achieve Aryze's independence, the Ascend IP would be "spun out" to Aryze through the IP License Agreement;

      b.   Beginning in approximately May of 2018, Ascend repeatedly confirmed in writing and orally the terms of the Robotics IP License Agreement – that Aryze had negotiated an exclusive, perpetual, and royalty free IP license from Ascend Robotics for all of the current and future Ascend IP; and

       c. Ascend Robotics would effectively implement the IP License Agreement.

114. To the extent that Askey's representations, on Ascend Robotics' behalf, are considered promises, he made them with no intention of honoring them.

115. Ascend Robotics' promissory fraud – through Askey – is further confirmed by Askey's repeated delays in providing a finalized written IP License Agreement. These delays were designed to conceal Ascend Robotics' deception, and that of Askey individually, and to induce Sweig, through Carcharadon, to continue his development of the Aryze business opportunity, which Ascend Robotics intended to and did usurp for its own benefit, and of which it and Ascend Build seized control.

116. Under Illinois law, the foregoing actions of Ascend Robotics – through Askey – constitute a scheme to defraud, and therefore are actionable under the law of promissory fraud.

117. Carcharadon and Sweig reasonably relied on Ascend Robotics' foregoing promises and representations.

118. The promissory fraud that Ascend Robotics perpetrated on Carcharadon and Sweig has damaged Carcharadon and Sweig in excess of $40 million.

119. Under Illinois law, these egregious circumstances entitle Carcharadon and Sweig to punitive damages.

WHEREFORE, Plaintiffs, Carcharadon, LLC and David Sweig, respectfully request that this Honorable Court enter judgment in their favor, and against Defendant, Ascend Robotics, LLC, in an amount to be determined at trial, impose a constructive trust on Defendant, Ascend Robotics, LLC, as it concerns the Aryze opportunity, and in Sweig and Carcharadon's favor, along with other legal and equitable relief allowed under Illinois law, including punitive damages, as well as costs, interest and attorneys' fees.

## COUNT III

## NEGLIGENT MISREPRESENTATION
## (CARCHARADON AND SWEIG AGAINST ASCEND ROBOTICS)

120.     Carcharadon and Sweig reallege and incorporate by reference paragraphs 1 through 102 as though fully set forth herein.

121.     In order to induce Sweig, through Carcharadon, to enter into the Agreements on Sweig's behalf and, after those Agreements were executed, induce Sweig, through Carcharadon, to continue performing those Agreements through Carcharadon instead of terminating them, Askey, on Ascend Robotics' behalf, made, inter alia, the following representations of material fact and promises:

> a.  Beginning in early 2018, Aryze was to be independent from Ascend Robotics. To achieve Aryze's independence, the Ascend IP would be "spun out" to Aryze through the IP License Agreement;
>
> b.  Beginning in approximately May of 2018, Ascend repeatedly confirmed in writing and orally the terms of the Robotics IP License Agreement – that Aryze had negotiated an exclusive, perpetual, and royalty free IP license from Ascend Robotics for all of the current and future Ascend IP; and
>
> c.  Ascend Robotics would effectively implement the IP License Agreement.

122.     The foregoing representations were false when made.

123.     Ascend Robotics and Askey collectively held majority voting interests in, and therefore had control of, Aryze. Ascend Robotics had a duty to convey accurate information to Sweig and Carcharadon.

124.     At a minimum, Ascend Robotics – through Askey – was negligent or careless in ascertaining the truth of the foregoing representations.

125.     Ascend Robotics' negligent misrepresentations are further confirmed by Askey's repeated delays in providing a finalized written IP License Agreement. These delays were designed

to conceal Ascend Robotics' deception, and that of Askey individually, and to induce Sweig, through Carcharadon, to continue his development of the Aryze business opportunity, which Ascend Robotics intended to and did usurp for its own benefit, and of which it and Ascend Build seized control.

126.    Ascend Robotics intended that Sweig and Carcharadon rely on the foregoing representations and Sweig and Carcharadon reasonably relied on the foregoing representations.

127.    Ascend Robotics' negligent misrepresentations have severely damaged Sweig and Carcharadon in excess of $40 million.

WHEREFORE, Plaintiffs, Carcharadon, LLC and David Sweig, respectfully request that this Honorable Court enter judgment in their favor, and against Defendant, Ascend Robotics, LLC, in an amount to be determined at trial, impose a constructive trust on Defendant, Ascend Robotics, LLC, as it concerns the Aryze opportunity, and in Sweig and Carcharadon's favor, along with other legal and equitable relief allowed under Illinois law, including punitive damages, as well as costs, interest and attorneys' fees.

**COUNT IV**

**EQUITABLE ESTOPPEL**
**(CARCHARADON AND SWEIG AGAINST ASCEND ROBOTICS)**

128.    Carcharadon and Sweig reallege and incorporate by reference paragraphs 1 through 102 as though fully set forth herein.

129.    For nearly two years, orally and in writing, Askey, on Ascend Robotics' behalf, individually and on Aryze's behalf, made representations and promises to Sweig that he, or Carcharadon, had at least a 5% equity ownership interest in Aryze. Askey signed and delivered to Sweig and Carcharadon agreements, and other documents, providing that Carcharadon, or Sweig, had a vested ownership interest in Aryze increasing from 5% to 17.5% by August of 2019.

26

130. In addition, Ascend Robotics – through Askey – approved numerous iterations of CIMs and related investor materials that Sweig, through Carcharadon, prepared that expressly provided that Aryze had negotiated with Ascend Robotics a perpetual, exclusive, royalty-free IP license to use the Ascend IP.

131. Carcharadon and Sweig, in good faith, relied on Ascend Robotics' foregoing representations and promises – through Askey – and continued working on Aryze's behalf, instead of terminating the Agreements.

132. In late August and September of 2019, Askey, on Ascend Robotics' behalf, adopted positions that were completely contrary to the positions it adopted and representations and promises it had made consistently since early 2018, especially concerning the IP License Agreement. These abruptly changed positions include, without limitation, its prevention of Aryze's independence from Ascend Robotics, by reversing the most material terms of the IP License Agreement. These abrupt changes rendered Aryze unfinanceable.

133. Under well-established, controlling principles of Illinois law, good conscience, good faith and honest dealing require that Ascend Robotics be equitably estopped from having taken positions contrary to their representations and promises set forth above on which Sweig and Carcharadon reasonably relied to their detriment.

134. Ascend Robotics' liability under equitable estoppel has severely damaged Sweig and Carcharadon in excess of $40 million.

WHEREFORE, Plaintiffs, Carcharadon, LLC and David Sweig, respectfully request that this Honorable Court enter judgment in their favor, and against Defendant, Ascend Robotics, LLC, in an amount to be determined at trial, impose a constructive trust on Defendant, Ascend Robotics, LLC,

as it concerns the Aryze opportunity, and in Sweig and Carcharadon's favor, along with other legal and equitable relief allowed under Illinois law, as well as costs, interest and attorneys' fees.

## COUNT V

### BREACH OF FIDUCIARY DUTY
### (CARCHARADON AND SWEIG AGAINST ASCEND ROBOTICS)

135.    Carcharadon and Sweig reallege and incorporate by reference paragraphs 1 through 102 as though fully set forth herein.

136.    Pursuant to Delaware law – under which Aryze was formed – Ascend Robotics owed fiduciary duties to Sweig or, as applicable, Carcharadon. Those fiduciary duties included a duty of loyalty and care and to act fairly regarding matters concerning Aryze and Sweig or, as applicable, Carcharadon, as a minority member of Aryze.

137.    Ascend Robotics, using its voting control over Aryze, breached its fiduciary duties owed to Sweig or, as applicable, Carcharadon, by, among other things: (a) drastically changing Aryze's business model that had been developed for the prior two years by suddenly insisting on material changes adverse to the long agreed terms of the IP License Agreement and which were contrary to representations and promises Askey, on Ascend Robotics' behalf, made to Sweig and Carcharadon, seizing control of Aryze's business opportunity for the benefit of itself and Ascend Build and, in doing so, sabotaging Aryze by making it wholly dependent on Ascend Robotics, thus rendering Aryze unfinanceable; (b) gutting of Aryze and rendering it without value by seizing the opportunity for the benefit of itself, Askey and Ascend Build; and (c) causing Aryze to terminate Sweig and Carcharadon in bad faith in September of 2019 and seeking to deprive Sweig or Carcharadon of his or its equity position in Aryze.

138.    Ascend Robotics' breaches of its fiduciary duties – through Askey – have severely damaged Sweig or Carcharadon in excess of $40 million.

28

WHEREFORE, Plaintiffs, Carcharadon, LLC and David Sweig, respectfully request that this Honorable Court enter judgment in their favor, and against Defendant, Ascend Robotics, LLC, in an amount to be determined at trial, impose a constructive trust on Defendant, Ascend Robotics, LLC, as it concerns the Aryze opportunity, and in Sweig and Carcharadon's favor, along with other legal and equitable relief allowed under Illinois law, as well as costs, interest and attorneys' fees.

## COUNT VI

### TORTIOUS INTERFERENCE WITH CONTRACTS
### (CARCHARADON AND SWEIG AGAINST ASCEND ROBOTICS)

139.    Carcharadon and Sweig reallege and incorporate by reference paragraphs 1 through 102 as though fully set forth herein.

140.    The Agreements are valid and enforceable contracts under Illinois law among Carcharadon and Askey, Cohanim and Aryze. Sweig is a third-party beneficiary of those Agreements.

141.    Ascend Robotics, controlled by its managing member, Askey, was well-aware of those Agreements and their material terms. Ascend Robotics was not a party to those Agreements.

142.    Ascend Robotics, controlled by Askey, intentionally and without justification, colluded with Askey, individually and on Aryze's behalf, to cause him to breach those Agreements, as alleged *supra*.

143.    Ascend Robotics, through and in collusion with Askey, seized control of Aryze's business opportunity for its own benefit and sabotaged it to the detriment of Sweig and Carcharadon.

144.    Ascend Robotics' tortious interference with the Agreements – through Askey – has severely damaged Sweig and Carcharadon in excess of $40 million.

145.     Under these egregious circumstances, Carcharadon and Sweig also are entitled to punitive damages.

WHEREFORE, Plaintiffs, Carcharadon, LLC and David Sweig, respectfully request that this Honorable Court enter judgment in their favor, and against Defendant, Ascend Robotics, LLC, in an amount to be determined at trial, impose a constructive trust on Defendant, Ascend Robotics, LLC, as it concerns the Aryze opportunity, and in Sweig and Carcharadon's favor, along with other legal and equitable relief allowed under Illinois law, including punitive damages, as well as costs, interest and attorneys' fees.

## COUNT VII

### TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY
### (CARCHARADON AGAINST ASCEND ROBOTICS)

146.     Carcharadon realleges and incorporates by reference paragraphs 1 through 102 as though fully set forth herein.

147.     The Agreements are valid and enforceable contracts under Illinois law between Carcharadon and Askey, Cohanim and Aryze.

148.     Carcharadon, on Aryze's behalf, had a reasonable expectancy that Aryze would be a highly successful business and that it would receive substantial economic rewards for its work on behalf of and through Aryze, including the value of its equity interest that had been increased to 17.5%.

149.     Ascend Robotics, through and in collusion with Askey, knew of those reasonable business expectancies.

150.     Ascend Robotics, through and in collusion with Askey, intentionally and unjustifiably interfered with those business expectancies, seized those expectancies for their own

benefit and sabotaged Aryze, thereby preventing Carcharadon from reaping the economics benefits from the success of Aryze.

151.    Ascend Robotics' tortious interference with the foregoing business expectancies has damaged Carcharadon in excess of $40 million.

152.    Under these egregious circumstances, Carcharadon is entitled to punitive damages.

WHEREFORE, Plaintiff, Carcharadon, LLC, respectfully requests that this Honorable Court enter judgment in its favor, and against Defendant, Ascend Robotics, LLC, in an amount to be determined at trial, impose a constructive trust on Defendant, Ascend Robotics, LLC, as it concerns the Aryze opportunity, and in Carcharadon's favor, along with other legal and equitable relief allowed under Illinois law, including punitive damages, as well as costs, interest and attorneys' fees.

## COUNT VIII

### PROMISSORY ESTOPPEL
### (CARCHARADON AND SWEIG AGAINST ASCEND ROBOTICS)

153.    Carcharadon and Sweig reallege and incorporate by reference paragraphs 1 through 102 as though fully set forth herein.

154.    Ascend Robotics – through Askey – repeatedly promised and represented to Carcharadon and Sweig that Ascend Robotics had negotiated the IP License Agreement with Aryze.

155.    Ascend Robotics – through Askey – presented Sweig and/or Carcharadon with several draft IP License Agreements consistent with the material terms of that Agreement that the parties had long ago reached. With Ascend Robotics' repeatedly approval – through Askey – Sweig, through Carcharadon, prepared and presented CIMs and other investor materials to potential investors. Those CIMs and other investor materials repeatedly represented that Aryze "has" negotiated the IP License Agreement and that Aryze would have a perpetual, exclusive,

royalty-free license for all current and future Ascend IP in the "field of use" – *i.e.*, commercial construction painting industry and related fields.

156. Askey, on Ascend Robotics' behalf, should have reasonably expected that Carcharadon and Sweig would rely on the foregoing promises and representations and that they would induce action or forbearance on Carcharadon and Sweig's part – and did induce action or forbearance.

157. Injustice can only be avoided by enforcing Ascend Robotics' promises.

158. Carcharadon and Sweig have incurred damages as a result of their reliance on Ascend Robotics' foregoing promises.

159. Carcharadon and Sweig fully and properly performed all obligations owed Ascend Robotics.

WHEREFORE, Plaintiffs, Carcharadon, LLC and David Sweig, respectfully request that this Honorable Court enter judgment in their favor, and against Defendant, Ascend Robotics, LLC, in an amount to be determined at trial, impose a constructive trust on Defendant, Ascend Robotics, LLC, as it concerns the Aryze opportunity, and in Sweig and Carcharadon's favor, along with other legal and equitable relief allowed under Illinois law, including punitive damages, as well as costs, interest and attorneys' fees.

## COUNT IX

### QUANTUM MERUIT
### (CARCHARADON AND SWEIG AGAINST ASCEND ROBOTICS)

160. Carcharadon and Sweig reallege and incorporate by reference paragraphs 1 through 102 as though fully set forth herein.

161. Ascend Robotics received the benefits of Carcharadon or Sweig's tireless efforts on Aryze's behalf for nearly two years that brought Aryze to the cusp of great success.

162.    It would be unjust and inequitable for Ascend Robotics to retain those benefits without compensating Carcharadon or Sweig for their reasonable value.

163.    Carcharadon and/or Sweig fully and properly performed all obligations owed Ascend Robotics.

WHEREFORE, Plaintiffs, Carcharadon, LLC and David Sweig, respectfully request that this Honorable Court enter judgment in their favor, and against Defendant, Ascend Robotics, LLC, in an amount to be determined at trial, impose a constructive trust on Defendant, Ascend Robotics, LLC, as it concerns the Aryze opportunity, and in Sweig and Carcharadon's favor, along with other legal and equitable relief allowed under Illinois law, including punitive damages, as well as costs, interest and attorneys' fees.

May 28, 2021

Respectfully submitted,

CARCHARADON, LLC and
DAVID SWEIG

By:   /s/   Philip J. Kessler
            One of Their Attorneys

Philip J. Kessler (Mi. Bar. No. 15921)
Thomas D. Noonan (Mi. Bar. No. 60450)
Hoffman & Kessler, LLP
1270 Avenue of the Americas, Suite 301
New York, New York 10020
212-651-3900
*Lead Counsel – Pro Hac Vice Pending*

John M. Sheldon (ARDC #6256666)
Elliot S. Wiczer (ARDC #6208432)
Wiczer Sheldon & Jacobs LLC
500 Skokie Blvd., Suite 325
Northbrook, IL  60062
847-849-4850
*Local Counsel*

## JURY DEMAND

Carcharadon and Sweig demand a trial by jury concerning all facts and issues so triable.